2013–1446

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Essociate, Inc.,

*Plaintiff–Appellant,*

v.

Azoogle.com, Inc., Epic Media Group, Inc., and Social Assets, LLC (doing business as Kinetic Social),

*Defendants–Appellees.*

Appeal from the United States District Court for the Western District of Wisconsin in case no. 11-cv-0727, Senior Judge Barbara B. Crabb

**REPLY BRIEF FOR PLAINTIFF–APPELLANT ESSOCIATE, INC.**

Derek A. Newman
Derek Linke
John Du Wors
Keith Scully
Newman Du Wors LLP
1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

*Attorneys for Plaintiff–Appellant Essociate, Inc.*

- i -

# CERTIFICATE OF INTEREST

Counsel for Plaintiff–Appellant Essociate, Inc. certifies as follows:

1. The full name of every party we represent is: Essociate, Inc.

2. The names of the real party in interest if the party named in the caption is not the real party in interest: not applicable

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are: none

4. The names of all law firms and the partners and associates that have appeared for the party in the lower tribunal or are expected to appear in this Court are: Newman Du Wors LLP, Derek A. Newman, John Du Wors, Derek Linke, and Keith Scully.

Dated: January 24, 2014

Respectfully submitted,

/s/ Derek Linke
DEREK A. NEWMAN
DEREK LINKE
JOHN DU WORS
KEITH SCULLY
NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

*Attorneys for Plaintiff–Appellant Essociate, Inc.*

## TABLE OF CONTENTS

Certificate of Interest ................................................................................ i

Table of Contents.................................................................................... ii

Table of Authorities ............................................................................... iii

Argument .................................................................................................1

I.   The District Court erred in excluding Michael Landau's testimony........1

    A.   Essociate identified the statements at issue......................................1

    B.   Essociate properly developed its argument that the District
         Court erred in excluding the statements. ........................................2

    C.   Landau's statements were admissible factual testimony, not
         expert opinion. ..................................................................................3

II.  Essociate was entitled to have all facts and reasonable inferences
     drawn in its favor and the District Court erred in granting summary
     judgment. ...............................................................................................5

    A.   The Epic Direct System provided virtual affiliates to existing
         merchant affiliate systems, including SpeedDate.com. .....................6

    B.   The Epic Direct System "configured" existing target affiliate
         systems, including SpeedDate.com...................................................8

III. The District Court erred in construing the entire "correlating" step
     rather than the term "correlating." .......................................................10

Conclusion .............................................................................................12

Certificate of Service .............................................................................13

Certificate of Compliance......................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................5

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
  334 F.3d 1294 (Fed. Cir. 2003) ............................................................10

*Frolow v. Wilson Sporting Goods Co.*,
  710 F.3d 1303 (Fed. Cir. 2013) ..........................................................5, 6

*IMS Tech., Inc. v. Haas Automation, Inc.*,
  206 F.3d 1422 (Fed. Cir. 2000) .............................................................. 6

*Musser v. Gentiva Health Servs.*,
  356 F.3d 751 (7th Cir. 2004) ...............................................................4, 5

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) .............................................................. 2

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ............................................................10

*United States v. Conn*,
  297 F.3d 548 (7th Cir. 2002) .................................................................3

*United States v. Munoz-Franco*,
  487 F.3d 25 (1st Cir. 2007) .................................................................... 4

*United States v. Santana*,
  342 F.3d 60 (1st Cir. 2003) ....................................................................3

*United States v. Weaver*,
  281 F.3d 228 (D.C. Cir. 2002) ...............................................................3

**Rules**

Fed. R. Evid. 701 ...................................................................................4, 5

Fed. R. Evid. 702 ......................................................................................5

ARGUMENT

**I.   The District Court erred in excluding Michael Landau's testimony.**

Epic claims that Essociate inadequately developed its argument that the District Court improperly excluded testimony from Michael Landau because Essociate failed to identify which of Landau's statements were at issue. Epic Br. at 14. But Essociate both identified the statements at issue and properly developed its arguments.

 **A.   Essociate identified the statements at issue.**

Essociate identified each statement when arguing that the District Court improperly granted summary judgment without considering Landau's testimony. Specifically, Essociate noted that the District Court improperly ignored Landau's testimony:

- about the operation of Essociate's affiliate system in connection with merchant affiliate systems (Essociate Br. at 21);

- that some of the offers in Epic's offer_urls table—such as SpeedDate.com, iBallers, and AsSeenOnPC—were for merchant affiliate systems (*id.* at 37);

- that SpeedDate.com, iBallers, and AsSeenOnPC had the ability to recognize and track referrals from particular webmasters (*id.*);

- that SpeedDate.com requested the inclusion of variables in landing page URLs because SpeedDate.com needed them for its internal tracking purposes (*id.* at 41); and

- that SpeedDate.com chose these variables because they were functional in SpeedDate.com's system (*id.* at 42).

Essociate identified the statements at issue, and there is no basis to strike Essociate's arguments.

### B. Essociate properly developed its argument that the District Court erred in excluding the statements.

Epic claims that Essociate waived these errors by failing to properly develop them. But an issue is waived only where it is either not raised in the opening brief, or is merely "adverted to in a perfunctory matter"—such as by raising it only in a footnote. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (internal citations omitted).

Essociate developed its argument. It identified each statement at issue. Essociate Br. at 21, 37, 41–42. It identified the factual basis for why the statements should have been admitted. *Id.* at 37, 42–43. It identified the District Court's error in the statement of issues. *Id.* at 2. Essociate described the District Court's error in the fact section of the brief, and devoted an entire argument section to the authority and reasons why the District Court erred. *Id.* at 21, 42–43.

**C. Landau's statements were admissible factual testimony, not expert opinion.**

Epic also claims that the factual statements were properly excluded as untimely expert testimony because Landau's testimony was technical in nature, and therefore he was required to qualify as an expert. But fact witnesses are allowed to testify about technical matters, as long as they are testifying to their first-hand knowledge about what they observed or did. *United States v. Weaver*, 281 F.3d 228, 231 (D.C. Cir. 2002). For example, in *Weaver*, the court allowed a postal inspector to testify about his conclusions from reviewing log books and applying his knowledge of postal service procedure and "routine computations" to the entries in the logs. *see also United States v. Santana*, 342 F.3d 60, 68 (1st Cir. 2003) (DEA agent could testify that he smelled marijuana without qualifying as an expert based on his perceptions and experience). Similarly, in the Seventh Circuit, testimony is generally expert opinion when it could be offered by any individual with specialized knowledge of the subject matter. *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002). By contrast, lay testimony is based on actual perception of an event rather than analysis of second-hand data. *Id.*

Landau's statements are factual and based on personal knowledge, not opinion testimony. For example, Landau testified that he was familiar with the

SpeedDate.com merchant affiliate system because he had participated in it, and that SpeedDate.com asked for particular variables for its own internal tracking purposes. Landau knew first-hand about the affiliate systems and offers because used them.

Even if Landau's testimony was lay opinion, it would still be admissible because lay witnesses may offer opinions that are based on their perception and experience. Fed. R. Evid. 701; *United States v. Munoz-Franco*, 487 F.3d 25, 35 (1st Cir. 2007). For example, in *Munoz-Franco*, a bank employee testified that he was familiar with the bank's operating procedures, and was properly permitted to testify that certain loan classifications were improper based on his knowledge of those procedures. *Id.* Similarly, Landau may testify that he is familiar with SpeedDate.com's operating procedures and that it formatted merchant offers in a particular manner, and about his personal understanding of that affiliate system's unique identification system for its affiliates.

Epic relies solely on a footnote in *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 n.2 (7th Cir. 2004), in support of its claim that Landau's factual testimony was properly excluded. But *Musser* notes that "[o]ccurrence witnesses, including those providing 'lay opinions', cannot provide *opinions* based on scientific, technical, or other specialized knowledge within the scope

- 4 -

of Rule 702." *Id.* (emphasis added). The *Musser* court evaluated whether a treating physician must be designated as an expert when offering opinion testimony, and noted that although a physician could testify about facts, once that physician offered opinion testimony as to causation they were an expert and must be disclosed as such. *Id.* The *Musser* court did not exclude factual testimony from physicians, only expert opinion. Unlike a treating physician that also offers an expert opinion as to causation, Landau did not offer opinion and his testimony is outside the scope of Rule 702 because he testified to his first-hand experience.

## II. Essociate was entitled to have all facts and reasonable inferences drawn in its favor and the District Court erred in granting summary judgment.

Epic's arguments rely on disputed issues of material fact and require that factual inferences be drawn in its favor. But in reviewing an order of summary judgment, this Court does not "weigh the evidence and determine the truth of the matter . . . ." *Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1308 (Fed. Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Rather, it "credit[s] all of the nonmovant's evidence and draw[s] all justifiable inferences in his favor." *Id.* Under that standard, summary judgment was inappropriate.

### A. The Epic Direct System provided virtual affiliates to existing merchant affiliate systems, including SpeedDate.com.

Epic incorrectly argues that Essociate sought to demonstrate infringement by comparing Essociate's affiliate system with the Epic Direct System. Epic Br. at 23–24. But the testimony about Essociate's system was offered only as the foundation for Landau's personal knowledge about the merchant affiliate systems operated by SpeedDate.com, AsSeenOnPC.com, and iBallers.com. A1890. Essociate is not asking for a comparison of the parties' systems in order to show infringement and the Court should ignore Epic's red herring.

Nor should the Court accept Epic's invitation to draw factual inferences in its favor. All reasonable inferences must be drawn in Essociate's favor. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000). Epic ignores this standard and invites the Court to weigh evidence and determine the truth, which is inappropriate here. *See Frolow*, 710 F.3d at 1308.

For example, Epic asks the Court to find that because Epic offered an alternative explanation for how its system worked, that the District Court properly ignored Essociate's evidence of infringement. Specifically, Epic concludes with little analysis that its "insertion order" business agreement between Epic and SpeedDate.com shows that "SpeedDate has signed ups [*sic*]

- 6 -

as Epic [*sic*] merchant, as part of a prior-art affiliate hub system, not a virtual affiliate system." Epic Br. at 25. Yet Epic neither explains nor cites any supporting authority for its proposition that the terminology used by its sales team and the structure of Epic's business relationships with merchants are relevant to the issues in dispute: whether SpeedDate.com operates a merchant affiliate system and whether Epic referred affiliates using the invention claimed in the '660 Patent. And even if Epic had identified a alternative, non-infringing explanation of its system, determining whether Epic's or Essociate's evidence is more credible is the function of the finder of fact.

Nor does Epic explain why its use of one tracking technique—the "cookie-and-pixel method"—means that its system did not also perform the technique claimed in the '660 Patent. Epic Br. at 25. But nothing in the record indicates the two forms of tracking are mutually exclusive. And while Epic insists that *Epic* did not rely on the patented invention for tracking, its internal documentation notes that some merchants required Epic to use specific URL syntax for the *merchants'* tracking purposes. A0137-38. What Epic relied on to track transactions is irrelevant to the infringement analysis.

Essociate set forth evidence sufficient to create a genuine issue of material fact about Epic's infringement. SpeedDate.com was among the

merchants who required Epic to use a specific URL syntax for landing page URLs. A1890–91; A1898-99. Epic followed SpeedDate.com's directions in order to refer its affiliates to SpeedDate.com (A0141), which Epic concedes operated a merchant affiliate system. Epic Br. at 26. A jury could reasonably infer, regardless of the labels Epic applies to its business dealings, that the Epic Direct System provided virtual affiliates to existing affiliate systems, including those operated by SpeedDate.com, iBallers, and AsSeenOnPC.

### B.   The Epic Direct System "configured" existing target affiliate systems, including SpeedDate.com.

Epic argues that summary judgment was properly granted as to whether it practiced the "configuring" step based on its selective citations to the record. But Epic's argument ignores key evidence and improperly relies on factual inferences drawn in Epic's favor.

First, Epic's configuring argument places great significance on the fact that the "format of the landing page URL is dictated by the merchant, not Epic." Epic Br. at 27. But this is consistent with "configuring" under the '660 Patent. For example, the specification notes that the merchant may supply "guidelines that ensure that the Merchant affiliate system is able to recognize" traffic as originating from a webmaster in the source system, such

as a "specified URL syntax" that "is recognized by the Merchant affiliate system." A0047 [8:32–48]. And a "specified URL syntax" is precisely what Epic's merchants provided it, including SpeedDate.com. Epic Br. at 25 ("Epic follows the direction of the merchant concerning how to set up the landing page URL . . .".)

Second, Essociate provided evidence that Epic merchants like SpeedDate.com could recognize a transaction as coming from an affiliate in the Epic Direct System. Epic's documentation explains that its system permitted merchants to use unique identifiers Epic included in URLs to track activity by particular Epic affiliates. A0148; A0151. Epic also described this functionality of its system in its summary-judgment motion:

> [S]ome merchants request that the affiliate ID or other information is passed along to them for their own purposes. Some **merchants would like to determine which affiliates are most productive, or which affiliates are sending low-quality traffic**.

A0125 (emphasis added). Essociate does not, as Epic insists (*see* Epic Br. at 28), take the position that the above excerpt concedes the entire "configuring" step. Rather, it is a concession that Epic's system permits merchants to recognize transactions as originating from an affiliate in the Epic Direct System. And even without Epic's admission of that functionality in its

- 9 -

briefing, Essociate provided sufficient evidence from Epic's own internal manuals to demonstrate, or at least demonstrate the existence of a genuine issue of material fact, that Epic performed this step. *See* A0148; A0151.

### III. The District Court erred in construing the entire "correlating" step rather than the term "correlating."

Citing only general principles of law, Epic claims that the District Court properly construed the term "correlating" in opposition to its plain meaning "for the simple reason that the claim language and claim scope is not plain on its face." Epic Br. at 30. But this circular reasoning fails. In determining whether claim language is plain and requires no further construction, this Court need look no further than whether the language is ambiguous. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003). There is a heavy presumption that claim terms carry their ordinary meaning. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

The "correlating" step provides:

> correlating the received source Webmaster unique identifier to a target Webmaster unique identifier corresponding to the unique identification system of the requested Merchant affiliate system

A0054 [21:66–22:2]. Rather than construe the term "correlating", the District Court addressed the entire step, yet declined to construe it

completely, holding only that it "requires more than simply passing on the source webmaster unique identifier." A0023–24.

There was no reason to construe the entire step. The parties did not request it. And they agreed on construction of some of the terms in the step: "source Webmaster unique identifier," "target Webmaster unique identifier," and "requested Merchant affiliate system." The District Court adopted those constructions. A0022. The remaining claim language: the words "correlate," "corresponding," and "unique identification system," have ordinary meanings and need no further construction. Epic provides neither citation nor argument as to why the term "correlating" should carry anything other than its ordinary meaning, or why the District Court properly disregarded other previously-construed terms in determining the scope of the "configuring" step.

In arguing to this Court that the District Court erred, Essociate noted in its opening brief that the District Court's construction would violate the plain language of the patent because it incorporated unsupported limitations. Specifically, Essociate noted that the District Court's "more than just passing through" limitation would exclude situations where the "source Webmaster unique identifier" was the same as the "target Webmaster unique identifier."

Epic claims that this Court must ignore Essociate's argument because it finds no support in the record. Epic Br. at 31. But the specification contemplates that the identifiers may be the same or may be different. *See* A0048 [11:8–13]. The District Court's limiting construction of the "correlating" step is inconsistent with the plain language and specification.

## CONCLUSION

The District Court's summary judgment of noninfringement, limiting construction of the "correlating" step, and exclusion of the Landau testimony were in error. Epic's summary-judgment motion for noninfringement should not have been granted in the District Court and Essociate respectfully requests that this Court reverse and remand for trial.

Dated: January 24, 2014                    Respectfully submitted,

/s/ Derek Linke
DEREK A. NEWMAN
DEREK LINKE
JOHN DU WORS
KEITH SCULLY
NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

*Attorneys for Plaintiff–Appellant Essociate, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Reply Brief for Plaintiff–Appellant Essociate, Inc. with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system. I certify that I have confirmed that counsel for Appellees is a registered CM/ECF user. Service on Appellees' counsel will be accomplished by the CM/ECF system, which will send notification of this filing to:

>James D. Peterson
>Email: jpeterson@gklaw.com
>Jennifer L. Gregor
>Email: jgregor@gklaw.com
>Godfrey & Kahn, S.C.
>One East Main Street, Suite 500
>Post Office Box 2719
>Madison, WI 53701-2719

I further certify that on January 24, 2014, I caused a copy of the foregoing Reply Brief for Plaintiff–Appellant Essociate, Inc. to be sent by U.S. Mail to the above attorneys for Appellees.

Dated: January 24, 2014              /s/ Derek Linke
                                     Derek Linke

                                     *Attorney for Plaintiff–Appellant*
                                     *Essociate, Inc.*

## CERTIFICATE OF COMPLIANCE

Counsel for Plaintiff-Appellant hereby certifies that:

1. The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because exclusive of the exempted portions it contains 2,400 words as counted by the word processing program used to prepare the brief; and

2. The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2011 in a proportionally spaced typeface: Equity Text B, font size 14.

Dated: January 24, 2014            /s/ Derek Linke
                                                    Derek Linke

                                                    *Attorney for Plaintiff–Appellant
                                                    Essociate, Inc.*